# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE S. BUTLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 c 5276 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| CHICAGO TRANSIT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Stephanie Butler, a bus operator for the Chicago Transit Authority (the "CTA"), filed a lawsuit after the CTA terminated her on June 18, 2012 and claims discrimination, retaliation, and hostile work environment for events leading up to and culminating in her termination. Butler is an African American woman who was forty-six years old when the CTA discharged her from her job as a bus operator. Butler's Amended Complaint ("Complaint") alleges: race/color discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); retaliation in violation of Title VII; disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a) (the "ADA"); hostile work environment; and age discrimination. CTA moves to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Butler has sufficiently pled only a Title VII race discrimination claim, CTA's motion is granted in part and denied in part.

# BACKGROUND[1]

Butler is a bus operator for the CTA. Before being discharged on June 18, 2012, Butler worked for the CTA for over twenty-one years. On April 11, 2012, Butler was charged with a procedural violation, after which the CTA placed her on probation. On May 10, 2012, four bus operators (including Butler) waited for the CTA bus sign-out operator to return to her post. The bus sign-out operator had to sign out the operators' buses before they could begin their shifts. As the sign-out time approached, one of the operators complained that it was time for them to depart. After the sign-out operator failed to appear, a CTA mechanic took over the sign-out process and incorrectly logged Butler's bus departure time. Butler subsequently informed the mechanic and the sign-out operator of the timing error. Because of the timing error, Butler was charged with another procedural violation, whereas the other three bus operators were not disciplined.

Butler informed her manager of the error and filed a complaint with the CTA, but her manager failed to investigate the complaint. Butler then filed a grievance claim. In an interview about the grievance, Butler explained that her departure time was incorrectly logged and that she had followed protocol and informed her manager of the problem. The CTA failed to investigate Butler's claims.

Butler was discharged on June 18, 2012, despite the fact that one of the violations was in grievance status and had not yet been adjudicated. During the discharge meeting, Butler began to experience shortness of breath and dizziness. Butler became disruptive and suffered what she describes as a breakdown. The police and fire department were called to the scene to take her to the hospital. That same day, Butler's union representative asked the manager who terminated

---

[1] The facts are taken from the complaint and are presumed true for the purpose of resolving the Defendant's motion to dismiss. *See Virnich v. Vorwald*, 644 F.3d 206, 212 (7th Cir. 2011).

Butler to postpone the discharge meeting because of the hospitalization, but the meeting was not postponed. In July, Butler was hospitalized again due to stress and depression.

On July 12, 2012, a dispute-resolution manager denied Butler's grievance. About one month later, Butler's union filed a "Notice of Reconsideration and Appeal" of the discharge. In October 2012, Butler was hospitalized again due to stress and depression resulting from her discharge and the appeal process. On or about April 15, 2013, Butler filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation and discrimination based on race, color, disability, and genetic information. In January 2014, after an arbitration hearing, the CTA reinstated Butler. On July 24, 2013, Butler, proceeding *pro se*, filed this action. After securing counsel, Butler filed the Complaint on February 15, 2014.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.; United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the

3

evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Subject Matter Jurisdiction

As an initial matter, the CTA moves to dismiss all of Butler's claims under Rule 12(b)(1), arguing that Butler does not having standing to bring these claims in federal court. CTA argues that Butler's suit is a challenge to the arbitration decision on her discharge and because she is not a party to the collective bargaining agreement (the "CBA") between the CTA and Amalgamated Transit Union, Local 241 and Local 308 (the "union"), she may not bring a claim challenging the arbitration decision. The CTA further argues that the Illinois Labor Relations Board ("ILRB") has exclusive initial jurisdiction to interpret the CBA and to hear any dispute arising from the CBA.

4

Butler's Complaint is somewhat difficult to interpret as it is a stream-of-consciousness factual narrative without any specific counts. However, taking all inferences in Butler's favor, as the Court must at this stage, Butler is not seeking to modify or vacate the arbitration decision or seeking interpretation of the CBA. Instead, Butler expressly brings the current action alleging wrongful discharge under several federal civil rights statutes. *See* Compl. ¶ 1 ("This is an action under Title VII of the Civil Rights Act of 1964, American Disabilities Act, Family and Medical Leave Act, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices[.]"). Jurisdiction is therefore proper under 28 U.S.C. § 1331.

The CTA does not argue that any provision of the CBA mandated that Butler arbitrate discrimination claims that are otherwise available under Title VII, the Age Discrimination in Employment Act ("ADEA"), the ADA, or the Family and Medical Leave Act ("FMLA"). And, although the CTA attached the CBA to their motion, the Court at this point has no information about the extent of the arbitration and the decision. Whether a collateral estoppel or *res judicata* theory precludes Butler's claims is not properly before the Court at this time. In any event, the Court has jurisdiction to consider Butler's Complaint.

**II.     CTA's Motion to Dismiss Butler's Claims**

The CTA also moves to dismiss the entirety of Butler's Complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). For the following reasons, the CTA's motion is denied as to Butler's Title VII race discrimination claim, but granted as to all other claims.

### A. FMLA & Punitive Damages Claims

Butler agrees to abandon her claims under the FMLA and for punitive damages. Therefore, Butler's FMLA and punitive damages claims are dismissed.

### B. Title VII Race Discrimination Claim

The CTA seeks to Dismiss Butler's Title VII race discrimination on the basis that she fails to sufficiently plead facts, either in her EEOC charge or in the Complaint, which could sustain a plausible claim that she was fired on the basis of race. The CTA asserts that it does not have sufficient notice of her claim. The Seventh Circuit has recently reiterated the bare-bones standard for Title VII pleading:

> "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together. But the proper question to ask is still '*could* these things have happened, not *did* they happen.'"

*Carlson v. CSX Transp., Inc.*, --- F.3d ----, 2014 WL 3361072, at *5 (7th Cir. 2014) (citations omitted). A plaintiff need not provide evidence at the pleadings stage, *id.*, or even all the facts "logically entailed" by a Title VII claim, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Butler's disjointed claims meet this low pleading standard. Butler alleges that she is an African American woman. She states that it is because she is African-American that she was the only bus operator written-up for the late log-out incident. Compl. ¶ 31. She alleges the CTA's failure to properly investigate and follow-up on her grievance was a "discriminatory action," *id.* ¶ 32, and that she was "improperly targeted and discharged based on . . . her race," *id.* ¶ 10. *See Carlson*, 2014 WL 3361072, at * 6 (a complaint alleging sex discrimination under Title VII "need only aver that the employer instituted a (specified) adverse employment action against the

plaintiff on the basis of her sex") (quotation marks and citation omitted). Termination is an adverse action for Title VII purposes. *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 612–13 (7th Cir. 2001) (materially adverse actions under Title VII may include "a termination of employment") (citation omitted). Butler has sufficiently pled a race discrimination claim related to her discharge.

The CTA argues that Butler's EEOC charge was insufficiently pled and that her EEOC charge did not put the CTA on notice of this claim. Butler's EEOC charge is attached to the Complaint and indicates in the checked boxes that she believed she had been discriminated based on "race," "color," and "genetic information." Compl. Ex. A.[2] In it Butler states: "I was subjected to different terms and conditions of employment than lighter skinned and non-Black employees, including but not limited to, an opportunity to receive a last chance agreement. On or about June 18, 2012, I was discharged." *Id.* It is clear from the face of the charge that Butler is alleging that her termination was the result of race-based discrimination. "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson*, 2014 WL 3361072, at *6. The CTA's motion to dismiss Butler's Title VII race discrimination claim is denied.

### C. Title VII Retaliation Claim

A claim for retaliation under Title VII requires an allegation that the employer discriminated against the plaintiff because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation or hearing under this title." 42

---

[2] A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* Butler's EEOC charge is integral to her discrimination claims.

U.S.C. §2000e-3. "Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Butler's allegations are simply insufficient.

Butler alleges that the CTA retaliated against her for "engaging in the lawful, protected activity of filing a complaint" and for "lawfully exercising her right to complain as well as for filing a grievance over the May 10, 2012 improper write-up." Compl. ¶¶ 19, 39. In her Response, Butler argues that during the May 12, 2012 interview with her manager, she brought up the inaccurate log-time, but "Plaintiff's supervisor retaliated against her for requesting a review of the discrepancy by writing her up for a procedural violation." Doc. 39 p. 16. Butler does not state that she made any allegations of discrimination in that log-out grievance or that in requesting a review of the discrepancy, she alleged discrimination. Filing internal grievances with an employer, without more, is not a protected activity under Title VII and cannot be the basis of a retaliation claim. *See Tomanovich*, 457 F.3d at 664. Because Butler's Complaint does not allege anything more than filing an internal grievance with the CTA, Butler's race-based retaliation claim is dismissed.

### D. ADA Discrimination Claim

The ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish her ADA claim, Butler will eventually be required to show: (1) she is disabled within the meaning of the ADA; (2) with

or without reasonable accommodation, she is qualified to perform the essential functions of her job; and (3) she has suffered an adverse employment action because of her disability. *See Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A disability is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Butler's allegations about disability-based discrimination are sparse. She refers generally to her "medical condition," "medical disability," and "health conditions." *See, e.g.,* Compl. ¶¶ 34, 37. Butler's complaint states she "showed signs of grave distress and anxiety" at the June 4, 2012 interview with her manager about the log-out incident. *Id.* ¶ 24. She states she has "stress induced anxiety and panic attack[s] and depression" and that she was hospitalized after her discharge meeting and then again several months later for stress and depression. *Id.* ¶¶ 29, 30, 33, 39. Butler reported feeling "shortness of breath and dizzy" at the termination meeting, which she explains as "a serious psychological or mental decomposition" that resulted in an ambulance being called and three to four days of hospital care. *Id.* at ¶¶ 26, 29.

Butler brings a wrongful discharge claim, however she does not allege a specific disability during her pre-discharge period of employment. Butler makes general allegations of health problems, anxiety, panic attacks, and depression that do not indicate she had any of those medical conditions prior to her termination. The sole pre-termination allegation is that, during the log-out violation interview, "Butler showed signs of grave distress and anxiety." Compl. ¶ 24. "Merely having a physical injury or medical condition is not enough" to be disabled under the ADA. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011). While depression may be a qualifying ADA disability, in some circumstances, *see Cassimy v. Bd. of Educ. of Rockford Pub. Schs.*, 461 F.3d 932, 936 (7th Cir. 2006) (collecting cases), Butler does not

9

present the Court with enough to plausibly infer she had anxiety or depression before the termination meeting, much less that her condition substantially limited a major life activity such that it would qualify under the ADA. *See* 42 U.S.C. § 12102(1) (defining "disability" in part as "a physical or mental impairment that substantially limits one or more major life activities"); *Powers*, 667 F.3d at 819. Butler does not plead that her medical condition interfered with a major life activity or that she ever notified the CTA of this condition, beyond the vague allegations that she showed distress in the June interview and that additional violations after the log-out violation should have indicated to the CTA that "something was wrong" with her. Compl. ¶¶ 24, 34–36. Furthermore, Butler does not allege that the CTA discharged her because of her medical condition. *See Moorman v. Wal-Mart Stores, Inc.*, No. 10-cv-405-MJR-CJP, 2011 WL 652220, at *6 (S.D. Ill. Feb. 11, 2011) (dismissing complaint with no allegations that disability motivating factor in adverse employment action). This is simply not enough to sustain this claim and Butler's ADA discrimination claim is dismissed. *See, e.g., Walton v. U.S. Steel, Corp.*, No. 2:10-CV-188-TLS, 2010 WL 3526263, at *3 (N.D. Ind. Sept. 2, 2010) (dismissing complaint when unclear allegations of disability did not suggest plausible claim).

### E. ADA Failure to Accommodate Claim

Butler's failure to accommodate claim is based on the CTA's refusal to postpone the termination hearing after she became ill. Compl. ¶ 29. The CTA argues that this claim was not included in the EEOC charge and, in any event, fails to state a claim. The Court agrees that Butler does not state a claim for failure to accommodate.

In order to bring her ADA failure to accommodate claim in federal court, Butler must have included that claim in her EEOC charge. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497,

500 (7th Cir. 1994).[3] Whether a claim was exhausted before the EEOC depends on whether the claim is "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). The EEOC charge and the Complaint must "describe the same conduct and implicate the same individuals," which gives the employer sufficient notice of the allegedly discriminatory conduct. *See Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 797 (N.D. Ill. 2011) (citing *Cheek*, 31 F.3d at 500). However, "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA," and a discrimination claim in an EEOC charge, without more, will not support a failure to accommodate claim if an investigation into the discrimination claim would not likely produce information about the accommodation claim. *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999).

> Butler's EEOC charge states in relevant part:
>
>> During my employment, the Respondent became aware of my disability and genetic and medical information. In addition, I was subjected to different terms and conditions of employment than lighter skinned and non-Black employees, including, but not limited to, an opportunity to receive a last chance agreement. On or about June 18, 2012, I was discharged. . . . I believe that I have been discriminated against because of my disability, and in retaliation, in violation of the Americans with Disabilities Act of 1964, as amended.

Compl. Ex. A. Butler's only allegations that the CTA failed to accommodate her disability are the failure to postpone the termination hearing and that the additional procedural violations were unusual for her, therefore the CTA should have noticed and concluded "something was wrong." Reading the charge in the most favorable light to Butler, it is possible that an investigation into Butler's wrongful termination claim would have unearthed her claim about the termination

---

[3] The ADA incorporates Title VII's enforcement provision, therefore claims for discrimination under the ADA must follow the same procedures as Title VII claims. 42 U.S.C. § 12117(a); *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004).

11

meeting itself and possibly about the additional violations before her termination. The Court will not dismiss Butler's claim under the failure to exhaust theory.

However, Butler does not plausibly plead a disability-based failure to accommodate claim. "To establish a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). First, as discussed above, Butler does not plausibly plead a pre-termination disability. Second, Butler does not allege that she ever notified the CTA of her disability. As for pre-termination meeting notice to the CTA of Butler's medical condition, the only allegation is that Butler "showed signs of grave distress and anxiety" during a meeting with her manager about the log-out violation. Compl. ¶ 24. This cannot be construed as notice of a disability—the burden was on Butler to expressly notify the CTA of her disability. *See Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (it is the employee's initial duty to inform the employer of his or her disability); 42 U.S.C. § 12112(b)(5)(A) (requiring accommodation of "known physical or mental limitations" of an employee). Butler states that her continued accumulation of procedural violations after the late log-out final procedural violation should have put the CTA on notice that "something was wrong with" her. Compl. ¶ 36. Again, no specific disability is articulated and alleging that her employer should have known about an unspecified illness falls far short of the "flexible, interactive process" the ADA regulations anticipated would occur between employer and employee to determine the appropriate accommodation. *See Beck*, 75 F.3d at 1135 ("But the regulations envision an interactive process that requires participation by both parties[.]" (quoting 29 C.F.R. pt. 1630)).

Third, Butler does not state anywhere that she requested any kind of accommodation to be able to perform the essential functions of her job. *See Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013) (citing *Vande Zande v. Wis. Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995) ("To accommodate a disability is to make some change that will enable the disabled person to work")). Rather, Butler alleges that the CTA failed to provide a reasonable accommodation of her disability because the General Manager conducting her termination hearing did not postpone the hearing when Butler became ill. Compl. ¶¶ 26, 29. Asking that a termination hearing be postponed is not relevant to the essential functions of Butler's job as a bus operator and is not an accommodation sought to enable her to perform the essential functions of her position; therefore, the Court dismisses Butler's failure to accommodate claim.

### F. Hostile Work Environment Claim

Butler's Complaint contains some allegations of both a Title VII and ADA hostile work environment claim. The CTA argues that hostile work environment was not presented to the EEOC and cannot reasonably be understood as included in the charge, and that it is insufficiently pled in any case. The Court agrees that Butler has not sufficiently pled a hostile work environment claim.

As discussed above, Butler's EEOC charge is based on the wrongful termination claim and includes that she was "subjected to different terms and conditions of employment" based on her race. Compl. Ex. A. Butler's Complaint alleges a hostile work environment in three ways: (1) through general conclusions ("retaliatory hostile working conditions" Compl. ¶ 1, "Ms. Butler's stress induced anxiety and panic attack and depression . . . were a result of having worked in a hostile working environment where she was being blatantly targeted and discriminated against." *Id.* ¶ 33); (2) as created by the failure to investigate her grievance

("Failure for not looking into Plaintiff's grievance is a display of discriminatory action against her whereby it created a hostile working environment . . ." *Id.* ¶ 32); and (3) as due to the log-out incident write-up, which Butler describes as inaccurate and designed to lead to her termination ("Defendant intentionally and maliciously subjected Plaintiff to such retaliatory, discriminatory, and hostile working environment, whereby intentionally writing-up Plaintiff with false and inaccurate violations in order to suspend and terminate Plaintiff's employment." *Id.* ¶ 42). This is the sum total of the hostile work environment details in the Complaint. In Response to this motion, Plaintiff now asserts the theory that the CTA "set Plaintiff up for failure" by giving her a faulty Corrective Action Guideline to follow during her post-April probation. *See* Doc. 39 pp. 11-12. Although, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), the Court must take every reasonable presumption in favor of the Butler. Butler's Complaint does include facts regarding the allegedly insufficient guidelines, *see* Compl. ¶¶ 11, 13–15, even if it does not connect-the-dots from those allegations to her hostile work environment claim. Therefore, the Court will consider this argument.

Of these claims, the only two that could remotely be considered reasonably related to the EEOC charge are the log-out incident write-up and the insufficient probationary period guidelines, both of which Butler contends contributed to her termination. Butler's EEOC charge gave the CTA sufficient notice that the events leading to her discharge would be at issue—the log-out incident being the triggering factor. The Court is unwilling to say the termination is not reasonably related to the log-out incident or her probationary period such that Butler's self-completed EEOC charge could not be interpreted to include a hostile work environment claim.

14

However, Butler does not plausibly plead a hostile work environment claim. Butler's conclusory assertions are not enough. *See Iqbal*, 556 U.S. at 678–79 (explaining Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Insufficient investigation into a grievance does not rise to the level of an incident offensive enough to qualify as harassment, much less actionable harassment "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). Factors used by the Court to determine whether harassment rises to the actionable level include, "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* One write-up for the log-out incident, even if falsely based, if not enough to support a hostile environment claim. Finally, there is simply not enough meat on the bones of Butler's allegations about the faulty probationary guidelines theory to support a claim that it created a hostile workplace environment. Butler does not allege that the log-out incident or even that her later procedural violations were based on any misunderstanding of her obligations under those guidelines. Butler's hostile work environment claim is dismissed.

### G. ADEA Age Discrimination Claim

To the extent Butler pleads an age discrimination claim, it is barred because it was not indicated on her EEOC charge. Unlike the hostile work environment or failure to accommodate claims, the charge has a specific checkbox for age discrimination. Compl. Ex. A. Butler's narrative of her claims on the charge lists Title VII, the ADA, and the Genetic Information Nondiscriminatory Act of 2008, but makes no mention of alleged age-based discrimination. There is nothing to give the EEOC or the CTA reasonable notice that age discrimination was at

issue. Butler did not properly raise her age discrimination claim in her EEOC charge, therefore she is barred from bringing it before this Court. *See* 29 U.S.C. § 626(d)(1); *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (upholding dismissal of ADEA claim not mentioned in EEOC charge).

### H. Injunctive Relief

CTA also asks this Court to strike from the Complaint Butler's demand for permanent injunctive relief. Because Butler may proceed with her race discrimination claim and therefore may be entitled to injunctive relief at a later point in the case, the CTA's request for this Court to consider the merits of this damages issue is premature and the Court will not consider its merits at this time. *See EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (explaining equitable relief may be appropriate after a finding of intentional discrimination).

## CONCLUSION

For the foregoing reasons, the CTA's motion to dismiss Title VII race discrimination claim is denied. The CTA's motion to dismiss all Butler's other claims is granted. Butler's FMLA, punitive damages, and age discrimination claims are dismissed with prejudice. Butler's Title VII retaliation, ADA, and hostile work environment claims are dismissed without prejudice. The CTA is given 14 days to answer the Amended Complaint.

Dated: August 12, 2014

_____
SARA L. ELLIS
United States District Judge